[Cite as *Cetorelli v. Duell Action Builders, L.L.C.*, 2026-Ohio-2811.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| ANGELA CETORELLI, | Case No. 2025CA00130 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2023CV00791 |
| DUELL ACTION BUILDERS LLC, et al., | Judgment: Affirmed |
| Defendants - Appellants | Date of Judgment Entry: July 22, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** JACK MORRISON, JR. and JEANANNE M. WICKHAM, for Plaintiff-Appellee; ROBERT E. SOLES, JR. and ROBERT E. SOLES, III and KARA M. DODSON, for Defendants-Appellants.

*Montgomery, J.*

{¶1}   Defendants-Appellants, Duell Action Builders, LLC, and Karl Jay Duell, IV, appeal from the judgment of the Stark County Court of Common Pleas awarding Plaintiff, Angela Cetorelli, treble damages, attorney fees, and costs in the amount of $123,218.50.  For the reasons below, we AFFIRM.

**STATEMENT OF FACTS**

{¶2}   This appeal involves a contract entered into between Plaintiff-Appellee, Angela Cetorelli ("Cetorelli"), and Defendants-Appellants, Duell Action Builders, LLC

("Duell Action Builders") and Karl Jay Duell, IV ("Duell"), individually.[1] Cetorelli is the homeowner of the property at issue, and resided there with her husband, who was at time of these events suffering from dementia and cancer and has since passed away. Duell is the sole owner and sole member of Duell Action Builders and has a home office that is not open to the public. Duell Action Builders engages in residential and commercial construction projects, including roofing, gutters, siding, additions, pole barns, as well as interior and exterior work. Duell Action Builders is listed on the Contract (see Cetorelli's Trial Exhibit 1, the "Contract") to provide home renovation and roofing services. Duell Action Builders does not have any employees, nor has it ever had any employees.

{¶3} In March 2022, Cetorelli needed some interior work done on her home and was actively looking online for a contractor. Cetorelli searched the well-known "Angi's List" for a contractor to perform painting and plaster/drywall repair in her home and located Duell Action Builders. Owner Duell visited Cetorelli's home as a representative of the company to provide a proper estimate for the requested work. While Duell was at the home, he told Cetorelli her roof needed work and asked if he could go up and inspect it. Cetorelli allowed Duell to look at the roof. Duell told Cetorelli her roof needed to be fixed/replaced. While promoting his company for the roof work, Duell told her there would be a five-year warranty for workmanship, which Duell and Duell Action Builders offer on most of their jobs. They also discussed replacing the skylights. At no point did Duell inform Cetorelli that his company had no employees and that the job would be performed by subcontractors.

---

[1] At times throughout this Decision, when appropriate, we will refer to Duell Action Builders and Karl Jay Duell as Appellant or Appellants in addition to Duell and/or Duell Action Builders.

{¶4} The total estimate included removal of the prior roof, installation of a new shingle roof, installation of a rolled roof on a flatter pitch, replacement of "rotted" plywood, delivery of the material to the site, dump and waste, removal of existing skylights and installation of new skylights with flashing, and installation of new gutters and gutter guards. Duell later prepared the Contract reflecting the above items, but there was no mention of a five-year warranty in the Contract and there was no three-day cancellation notice. Regarding the warranty, Duell testified that he decided to exclude the five-year warranty from the Contract because he believed Cetorelli was "argumentative" and "would be a problem down the road." Duell also stated he did not tell Cetorelli that he excluded the warranty until after she filed the lawsuit. On March 9, 2022, Cetorelli signed the Contract with Appellants at her residence and paid a deposit of $10,140.00.

{¶5} Duell subsequently hired unidentified subcontractors to perform the work on Cetorelli's roof and gutters. Duell testified he had no recollection of their identities. When testifying at trial, Duell had no details about who his subcontractors were, did not know the company they worked for, and did not have a business address. Prior to completing the roof and gutter job, Duell came back to Cetorelli and requested that she pay the remaining balance. Cetorelli informed Duell that she was unhappy with the work on the roof but Duell assured her that he would handle it. Despite this, on March 21, 2022, Cetorelli paid the remaining balance of $5,210.00, upon completion.

{¶6} Appellants provided a "final invoice" dated May 16, 2022, to Cetorelli, with a total of $15,350.00, matching the amount that Cetorelli had paid. The Final Invoice, like the Contract, included identical provisions for the removal of all shingles down to decking, new metal roof boots, new flashing, and the replacement of rotted plywood, but removed the

installation of skylights and flashing. Duell testified he was unable to find the skylights for the replacement. Migal Picone testified he told Cetorelli that the skylights did not need replaced so she agreed not to replace them.

{¶7} After completion, Cetorelli again contacted Duell regarding issues with the new roof. Cetorelli reached out to Duell multiple times before he finally responded. When Cetorelli spoke to Duell, he was argumentative. Duell eventually came back out to Cetorelli's residence to check the work, where Duell admitted he could see areas of the roof that were wavy, with wavy shingles, and he disapproved of the shadow ridge cap. Duell and Picone, Duell's project manager, then replaced one sheet of plywood but made no further repairs. Duell told Cetorelli he confronted the roofing crew and terminated them. At no time did anyone inspect the wood decking via Cetorelli's attic. Duell admitted that he also did not go into the attic to inspect the wood decking. Picone testified that there were shingles on the roof that would take too much effort to get off, so the shingles were left on, and plywood was placed on top of it.

{¶8} Cetorelli continued to contact Duell because of complaints she was having with the roof and gutters, at times the gutters were pouring water down the side of her home. Due to issues with Cetorelli's husband and his decline in health, Cetorelli's niece, Carbone, attempted to discuss the matter with Duell on several occasions. Carbone stated that Duell was "[h]ostile always, argumentative. He would start off - - he would call me back and start off fine. We would try and talk, and then he would turn argumentative and hostile again. So there was really no discussion able to be had." Trial Tr., p. 37.

{¶9} Duell eventually contacted Jeff Craig, owner of Craigwise Construction, LLC, and requested that he go to the Cetorelli home and essentially "sign off" on the roof. Craig

is an independent and objective roofer who Duell randomly selected to inspect and provide an opinion regarding the workmanship. In other words, Duell and Craig had no prior relationship. Craig went to Cetorelli's home and Picone was present when Craig arrived. Craig took 85 to 100 pictures and later forwarded them to expert witness, Vanessa Vega. Craig testified that after he inspected the roof and gutters, he could not morally or ethically sign off on the work done. Craig stated the roof was improperly installed and "you could see that even from the ground." Trial Tr., pp. 311-12. Craig reported to both Duell and Cetorelli that the roof and gutters needed to be redone. Craig signed an Affidavit stating that in order for the roof to be done properly, it must be torn off and replaced in its entirety. Craig further testified that, in response to his report, Duell became very hostile and threatened Craig to withdraw his opinion. Duell admitted, via his deposition, that he told Craig, "I would just be cautious that you don't get yourself into a situation where you're dragged into court." Trial Tr., p. 32. Thereafter, Duell did not make any repairs or replacements. Craig advised Duell that the situation won't go away, that he needed to make it right with Cetorelli.

{¶10} On June 14, 2022, Cetorelli filed her initial Complaint. On December 7, 2022, she sent Duell a letter attempting to cancel the Contract and receive a refund and cited the Home Sales Solicitation Act's provision, R.C. 1345.23. There is nothing in the record to suggest that Duell returned any of Cetorelli's payments following that letter, as statutorily required. On February 24, 2023, Cetorelli sent a second letter attempting to cancel the Contract and obtain a refund. On May 3, 2023, Cetorelli filed the instant action. Thereafter, Duell informed her that he removed the five-year warranty from their initial Contract because of his gut feeling that Cetorelli would be difficult.

{¶11}   During trial, Vanessa Vega ("Vega") testified as an expert on behalf of Cetorelli. For this case, Vega inspected Cetorelli's roof on September 27, 2023, and completed a report with photographs.  Vega's inspection revealed numerous issues with the job performed by Duell Action Builders.  Trial Tr., pp. 143-197.  Vega produced an expert report and also testified as to the numerous ways in which Duell Action Builders failed to perform the work in a workmanlike manner and the many ways that the defective workmanship will result in water intrusion.  Specific issues included: (1) Areas in which the fascia was exposed, allowing water intrusion; (2) The failure to install the gutters properly, resulting in water flowing back toward the roof and down the side of the home; (3) Incomplete and messy caulking, which can allow water intrusion; (4) Multiple protruding and exposed nails, which can allow water intrusion; (5) Damage to the skylights and incomplete caulking and flashing around the skylights, which can allow water intrusion; (6) Old shingles left around roof vents; (7) An incorrect boot used around the electrical pole vent; (8) No water channels around roof vents, allowing water to be trapped under shingles; and (9) Multiple lifted, raised, or curled shingles due to poor installation and workmanship.  In her expert opinion, the workmanship was "pretty bad," and the roof should be replaced.  *Id.*  Vega provided an accompanying estimate, admitted as an exhibit, that itemized each element of the repair for a total replacement cost of $40,710.12.

{¶12}   Duell and Duell Action Builders also called their own expert witness, Michael Kennedy, to rebut aspects of Vega's testimony and report. Kennedy conducted his inspection approximately one year after Vega's inspection.  On cross-examination, Kennedy stated that withholding a warranty and not informing a customer that subcontractors would perform the roof work did not comport with legitimate business practices. Kennedy further stated that

wood decking cannot and should not be placed on top of existing shingles and acknowledged that the rolled roofing was peeling back from the skylights. Kennedy testified that there were multiple areas in which he agreed with Vega's opinion but concluded the roof could be repaired, rather than replaced, and that the repairs would not be too costly. After all the evidence was presented, the trial court found in favor of Cetorelli and issued detailed findings of fact and conclusions of law.

## STATEMENT OF THE CASE

{¶13} Cetorelli originally filed suit against Duell Action Builders and Duell asserting claims of Breach of Contract, Breach of Warranty, violations of the Ohio Consumer Sales Practices Act ("CSPA"), and the Ohio Home Sales Solicitation Act ("HSSA"). Cetorelli proceeded to trial only upon her claims under the CSPA and HSSA. Prior to trial, Appellants filed a motion to limit damages to the agreed upon contract price, or $15,350.00, and argued that Cetorelli elected to pursue solely HSSA cancellation and refund remedies. The trial court denied the motion and the case proceeded to a bench trial on March 18-19, 2025, and April 2, 2025.

{¶14} The following individuals provided testimony: Cetorelli, Antonia Carbone ("Carbone"), Jeff Craig ("Craig"), Vanessa Vega ("Vega"), Karl Jay Duell, Mitchell Picone ("Picone"), and Michael Kennedy ("Kennedy"). Both Vega and Kennedy were admitted as experts in roofing and roofing systems. At the outset of trial, Cetorelli stated she sought to proceed under both the HSSA and CSPA, including an award of treble damages and attorney fees. At the end of trial, the trial court instructed the parties to submit their proposed findings of fact and conclusions of law; the parties filed same on April 23, 2025.

{¶15} Based upon the testimony and evidence presented, the trial court issued its detailed findings of fact and conclusions of law finding in favor of Cetorelli on the CSPA and HSSA claims. Specifically, the trial court found that: (1) Duell and Duell Action Builders failed to include the requisite "Notice of Cancellation," violating both the HSSA and CSPA; (2) Duell and Duell Action Builders failed to perform the work in a workmanlike manner, violating the CSPA (R.C. 1345.02(B)); (3) Duell himself stated there would be a five-year workmanship warranty and then excluded the warranty from the Contract without informing Cetorelli, violating the CSPA; and (4) Duell failed to inform Cetorelli that Duell Action Builders had no employees and would instead be using subcontractors and subcontractors had no warranty, violating the CSPA. On May 1, 2025, the court awarded Cetorelli treble damages in the amount of $57,000.00, plus statutory interest and costs. At a subsequent fee hearing, the court awarded $66,218.50 in attorney fees, for a total judgment of $123,218.50. Appellants filed the instant appeal and assert six (6) assignments of error.

## ASSIGNMENTS OF ERROR

{¶16} "I.     THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING DEFENDANTS' MOTION IN LIMINE AND AWARDED TREBLE DAMAGES AND ATTORNEY'S FEES UNDER THE CSPA AFTER PLAINTIFF ELECTED CANCELLATION UNDER THE HSSA, ADMITTED CANCELLATION IN THE OPERATIVE COMPLAINT, AND CONFIRMED THAT ELECTION AT TRIAL."

{¶17} "II.     THE TRIAL COURT ERRED BY AWARDING TREBLE DAMAGES UNDER R.C. § 1345.09(B) WITHOUT IDENTIFYING ANY PRIOR JUDICIAL DECISION PLACING DEFENDANTS ON NOTICE THAT THEIR CONDUCT WAS DECEPTIVE OR UNCONSCIONABLE."

{¶18} "III.     THE TRIAL COURT ERRED BY ADMITTING AND RELYING UPON PAROL EVIDENCE OF AN ALLEGED FIVE-YEAR LABOR/WORKMANSHIP WARRANTY TO VARY THE PARTIES' FINAL WRITTEN AGREEMENT, IN CONTRAVENTION OF THE PAROL EVIDENCE RULE, AND BY BASING FINDINGS AND LIABILITY UNDER THE CSPA ON THAT EXTRINSIC WARRANTY TESTIMONY."

{¶19} "IV. THE TRIAL COURT ERRED BY AWARDING FULL REPLACEMENT COST DAMAGES WITHOUT FINDING THAT REPAIR WAS INADEQUATE, RESULTING IN AN AWARD NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} "V. THE TRIAL COURT ERRED BY IMPOSING PERSONAL LIABILITY UPON KARL JAY DUELL IV FOR ALLEGED CSPA VIOLATIONS WHERE (A) DRAFTING A NON-COMPLIANT CONTRACT SUPPORTS, AT MOST, A REMEDIAL HSSA CONSEQUENCE, AND (B) THE COURT RELIED UPON INADMISSIBLE PAROL EVIDENCE TO FIND DECEPTIVE "WARRANTY STRIPPING.""

{¶21} "VI. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY AWARDING ATTORNEY'S FEES BASED UPON AN UNENFORCEABLE CONTINGENT FEE AGREEMENT AND BY DISREGARDING INDEPENDENT EXPERT TESTIMONY REGARDING THE REASONABLE AMOUNT OF ATTORNEY'S FEES."

<u>ANALYSIS</u>

*1) Are the remedies under the HSSA and CSPA mutually exclusive*

{¶22} In their first assignment of error, Appellants claim that the remedies under the HSSA and CSPA are mutually exclusive. Appellants argue that because Cetorelli provided written notice to "cancel" the contract prior to trial, she elected her remedy under the HSSA and was limited to a refund in the amount of $15,350.00. Cetorelli claims that the remedies are not mutually exclusive and that the HSSA is part and parcel of the CSPA, such that the statutes must be read together.

{¶23} A question of statutory construction presents an issue of law that we determine de novo on appeal. *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 2012-Ohio-5366, ¶ 12; *Williams v. Am. Suzuki Motor Corp.,* 2008-Ohio-3123, ¶ 19 (5th Dist.); *citing State v. Standen,* 2007-Ohio-5477, ¶ 7 (9th Dist.). De novo review requires "an independent review of the statute without any deference to the trial court's determination." *Standen,* ¶ 7. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning

there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶24} Thus, absent ambiguity, we must apply the statute as written and no interpretation or further investigation is required. *State v. Hurd*, 2000-Ohio-2, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995). Further, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *See* R.C. 1.42. Importantly, "in enacting a statute, it is presumed * * * [t]he entire statute is intended to be effective" to reach a just and reasonable result. R.C. 1.47(B) and (C). *Santos v. Buckeye 5, LLC*, 2023-Ohio-3602, ¶ 35 (7th Dist.), *appeal not allowed*, 2024-Ohio-597.

### a) Home Solicitation Sales Act Generally

{¶25} The Home Solicitation Sale[s] Act ("HSSA") appears in R.C. 1345.21 through 1345.28. *Grinder v. Schaaf*, 2025-Ohio-4723, ¶ 26 (11th Dist.). The intent of the HSSA is well-settled. It "is designed to provide a consumer with a weapon against high pressure sales tactics occurring in the home," and provide consumers with a cooling-off period within which a transaction may be cancelled. *Altek Evtl. Serv. Co. v. Harris*, 2009-Ohio-2011, ¶ 31 (5th Dist.), citing *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 83 Ohio App.3d 53, 63 (2d Dist. 1992), citing *Brown v. Martinelli*, 66 Ohio St.2d 45, 50 (1981); *Garber v. STS Concrete Co., L.L.C.*, 2013-Ohio-2700, ¶12 (8th Dist.); *Smith v. Sack*, 2016-Ohio-763, ¶ 23 (11th Dist.).

{¶26} The HSSA applies to "home solicitation sales," which are defined as "a sale of consumer goods or services in which the seller * * * engages in a personal solicitation of the

sale at a residence of the buyer * * * and the buyer's agreement * * * to purchase is there given to the seller * * *." R.C. 1345.21(A). Courts have held that "home improvement contracts generally fall within the purview of the HSSA." *Kamposek v. Johnson*, 2005-Ohio-344, ¶ 17 (11th Dist.); *Patterson* v. *Stockert,* 2000 Ohio App. LEXIS 6004, *11 (5th Dist.) (stating that home improvement products and services, including roofing material, siding, and the like, fall within the definition of "consumer goods or services."). Here, there is no genuine dispute that the HSSA applies.

{¶27} The HSSA requires each home solicitation sale to include a written agreement in which the seller gives the buyer notice of the buyer's right to cancel the sale within three business days. *Garber, supra*, at ¶18, citing R.C. 1345.22 and R.C. 1345.23. Pursuant to R.C. 1345.23(B)(l), a "Notice of Cancellation" is to appear "clearly and conspicuously on the copy of the contract left with the buyer in bold face type * * *" in connection with every home solicitation sale. The Notice of Cancellation must also be provided in duplicate and easily detachable, with the language expressly set forth as provided in R.C. 1345.23(B)(2). If the agreement does not include notice of the right to cancel, the buyer's right to cancel does not expire, and the three-day period for cancellation does not begin to run until the seller gives the buyer notice of the right to cancel. *Kamposek, supra*, at ¶ 24, citing R.C. 1345.23(C). If the buyer exercises his or her right to cancel the sale, the seller must "refund all payments made under the contract of sale." R.C. 1345.23(D)(4)(a).

{¶28} Here, it is undisputed that the parties' written agreement did not contain any notice of the buyer's right to cancel. Despite the lack of notice, and after she filed the lawsuit, Cetorelli sent two letters attempting to cancel the contract. Duell admitted at trial that he kept all the money paid by Cetorelli under the Contract. Trial Tr., at p. 24. Because

Appellants did not provide the required notice and did not refund the money, Appellants clearly violated the HSSA and the CSPA. "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code [HSSA] constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code [CSPA]." R.C. 1345.28; *Garber*, ¶ 19; *Santos*, supra.

{¶29} The buyer's remedy under the HSSA is limited to a refund. Unlike the CSPA, there is no provision for damages or attorney fees. R.C. 1345.23(D); R.C. 1345.09. Also, unlike the CSPA, the HSSA does not contain a "substantial performance" exception to a buyer's right to a full refund. In other words, even if most of the work has been done under a home improvement contract or the like, the buyer remains entitled to a full refund. Further, the HSSA does not require the refund owed to the buyer to be offset by the benefit conferred on the buyer by the seller under an unjust-enrichment theory. *Sack*, ¶ 33.

### b) Consumer Sales Practices Act Generally

{¶30} Ohio's Consumer Sales Practices Act is set forth in R.C. Chapter 1345 and generally "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices" as set forth in R.C. 1345.02 and 1345.03. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 24. (Footnote omitted.); *Sharp v. Vaughanscapes LLC*, 2024-Ohio-4749 (5th Dist.).

{¶31} The CSPA is a remedial law designed to provide civil remedies for aggrieved consumers and must be liberally construed in their favor. *Phillips v. Ratchet Automotive &*

*Performance*, 2021-Ohio-1033, ¶ 16 (10th Dist.); *Hoague v. Cottrill Servs., LLC,* 2024-Ohio-531, ¶ 55 (5th Dist.), citing *Nicholson v. Davis Auto Performance,* 2024-Ohio-205, ¶ 19 (5th Dist.), citing *Swoger v. Hogue,* 2015-Ohio-506, ¶ 36 (5th Dist.), citing *Einhorn v. Ford Motor Co.,* 48 Ohio St.3d 27, 29 (1990). The purpose of the CSPA is to protect consumers, not to assign responsibility for consumers to recognize and avoid a business's deceptive acts. *Id.*; citing *Jones v. J. Duran, Inc.,* 2020-Ohio-4606, ¶ 14 (6th Dist.). The CSPA prohibits unfair, deceptive, or unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction. *Williams v. Spitzer Autoworld Canton, LLC*, 2009-Ohio-3554; R.C. 1345.03, R.C. 1345.02.[2] There is no real dispute that Duell Action Builders' replacement of Cetorelli's roof and gutters falls under the purview of the CSPA.

{¶32} There are three sources that identify whether "a specific act or practice is a deceptive sales practice which violates the general directive of R.C.1345.02(A) * * *" *Swoger v. Hogue,* 2015-Ohio-506, ¶ 39 (5th Dist.). First, R.C.1345.02(B), "contains an enumerated list of practices that are unfair or deceptive;" second, R.C. 1345.05(B)(2) authorizes the attorney general "to adopt substantive rules defining acts or practices that violate R.C.1345.02[3],"

---

[2] Relevant definitions of supplier and consumer are provided under R.C.1345.01 and are applicable here.

[3] Pursuant to R.C. 1345.02(B), the following are the enumerated practices that are specified as unfair or deceptive:

  (1)  That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
  (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
  (3) That the subject of a consumer transaction is new, or unused, if it is not;
  (4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;
  (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

which are found in the Ohio Administrative Code; and third, Ohio courts may define specific acts and practices that are deceptive. *Id.,* citing *Frey v. Vin* Devers, *Inc.,* 80 Ohio App.3d 1, 6 (6th Dist. 1992); *Fletcher v. Don Foss of Cleveland, Inc.,* 90 Ohio App.3d 82, 86 (8th Dist. 1993).

**{¶33}** For example, R.C. 1345.02(B)(2) provides that "work performed by a supplier must be done in a workmanlike manner, and failure to do so may give rise to a violation of the CSPA." *Sharp v. Vaughanscapes* LLC, 2024-Ohio-4749, ¶ 45 (5th Dist.). However, "not every breach constitutes a violation [of the CSPA]." *Cartwright v. Beverly Hills Floors, Inc.,* 2013-Ohio-2466, ¶ 17. Individual liability may also exist for acts that violate the CSPA. *Swoger,* ¶ 54, citing *Grayson v. Cadillac Builders, Inc.,* 1995 WL 546916, *3 (8th Dist.). "In order to hold a corporate officer personally liable for his actions in violation of the CSPA, the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done." *Id.,* citing *Grayson*. Finally, R.C. 1345.09 sets forth the remedies for violations of the CSPA. It provides:

(A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.

(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the

---

(6) That the subject of a consumer transaction will, be supplied in greater quantity than the supplier intends;
(7) That replacement or repair is needed, if it is not;
(8) That a specific price advantage exists, if it does not;
(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;
(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages * * *.

R.C. 1345.09(A), (B).

{¶34} Thus, an individual may recover actual economic damages based upon violations prohibited by R.C. 1345.02 and/or R.C. 1345.03. Subsection (B) above allows an individual to recover three times the amount of actual economic damages (treble damages) for violations that have been declared deceptive or unconscionable under R.C. 1345.05(B)(2) (i.e. the Ohio Administrative Code) or as determined by a court of this state to violate R.C. 1345.02, 1345.03, or 1345.031 after the decision has been made available for public inspection. *Id*. at ¶ 28. "Actual economic damages" means direct, incidental, or consequential pecuniary losses resulting from violations of the CSPA. (Emphasis added); *Smith v. Palm Harbor Homes, Inc.*, 2006-Ohio-5863, ¶ 20 (5th Dist.).

### c) Specific Violations of CSPA and HSSA

{¶35} Here, the record contains competent, credible evidence to support the trial court's findings that Duell and Duell Action Builders committed numerous violations of the CSPA and HSSA. First, roof expert Vega produced an expert report and testified as to the numerous ways in which Duell Action Builders failed to perform the work in a workmanlike manner and the many ways that the defective workmanship will result in water intrusion.

Overall, she opined the work performed was "pretty bad." Duell himself also admitted that there were wavy shingles on Cetorelli's roof, and that he was unhappy with the ridge cap and other aspects of the job done by the subcontractor crew. Thus, while not every breach of warranty or breach of contract rises to the level of a violation under the CSPA, the facts of this case support the trial court's finding that Duell Action Builders violated R.C. 1345.02(B)(2).

{¶36} Second, Duell hired unknown subcontractors to perform the work and did not inform Cetorelli that those subcontractors would be performing the work, a violation of the CSPA. Third, under R.C. 1345.02(B)(10), Duell testified as if on cross-examination that he told Cetorelli there would be a five-year labor/workmanship warranty on the roof and gutters prior to Cetorelli signing the Contract. Cetorelli relied on that representation when she agreed to have Duell's company replace her roof and gutters. Duell then unilaterally decided to exclude the warranty from the Contract, and he did not tell her this fact until after she brought litigation against him. As such, Duell and Duell Action Builders committed an unfair and deceptive trade practice under R.C. 1345.02(B)(10).

{¶37} Fourth, pursuant to OAC 109:4-3-11(A)(5), it is a deceptive act or practice when a supplier fails to conform to the "requirements of sections 1345.21 to 1345.27, and 1345.99 of the Revised Code relative to home solicitation sales or misrepresent in any manner, the consumer's or prospective consumer's right to cancel provided for under such sections, when such sections are applicable." It is undisputed that Duell Action Builders, and Duell as the one who prepared the Contract, failed to include the Notice of Cancellation, which is a violation of R.C.1345.23(B). Thus, this violation is a deceptive act or practice under the Ohio Administrative Code, and a violation of the CSPA. As Duell participated in the commission

of the violation by failing to include the Notice of Cancellation, he is also personally liable for the violation of the CSPA.

{¶38} Fifth, pursuant to OAC 109:4-3-05(D)(16), in transactions involving the performance of any repair or service, it is a deceptive act or practice for the supplier to "fail to disclose to the consumer * * * that any part of the repair or service will be performed by a person other than the supplier or the supplier's employees if the supplier disclaims any warranty of the repair or service performed by that person * * *." Because Duell and Duell Action Builders excluded the five-year warranty for workmanship from the Contract without informing Cetorelli, did not have actual employees and utilized subcontractors to perform the work, both Duell and Duell Action Builders again violated the Ohio Administrative Code and CSPA.

### d) Remedies under the HSSA and CSPA are not mutually exclusive

{¶39} The issue arises regarding whether the remedies under the CSPA and the HSSA are mutually exclusive. This Court acknowledges the numerous Ohio appellate courts that hold as Appellants suggest - if a buyer or consumer elects to cancel the contract and receive a full refund under the HSSA, that same consumer cannot pursue additional damages under the CSPA. These courts require the consumer to "elect" his or her remedy. *Sack*, ¶ 27, citing (holding that because the buyer canceled the contracts, he elected to proceed under the HSSA; thus, his remedy was limited to a refund, and he was not entitled to damages under the CSPA); *Kamposek, supra; White v. Allstate Ins. Co.*, 2009-Ohio-5829, ¶ 14 (8th Dist.) (holding the remedies provided for in these two statutes are mutually exclusive; "[h]aving chosen to cancel the contract under the HSSA, [the plaintiff] could not pursue damages under the CSPA."); *Garber, supra*, at ¶ 23 (finding that a consumer must elect which remedy to base

recovery on because the consumer cannot recover under both R.C. 1345.23 and 1345.09; the remedies are mutually exclusive); *Allphase Restoration & Constr. v. Youngblood*, 2015-Ohio-4043 (10th Dist.) (holding that the consumer must elect which remedy to base recovery on, either Ohio's Home Solicitation Sales Act (HSSA) or the Consumer Sales Practices Act (CSPA), because the consumer cannot recover under both R.C. 1345.23 and R.C. 1345.09. The remedies are mutually exclusive); *Clemens v. Dewel*, 100 Ohio App.3d 423, 433 (2d 1995) (holding that the consumer was not entitled to both a recission of the contract under the HSSA and treble damages under the CSPA; cancellation results in recission of the contract and forecloses damages); *McGill v. Image Scapes*, 2010-Ohio-6246; *Murphy v. Higgins*, 2011 Ohio Misc. LEXIS 16988, *10-11 (Franklin Cty. Common Pleas) (holding that while the consumer is entitled to cancel the contract under the HSSA, she is precluded from also recovering an award of attorney's fees under the CSPA.); *Politis v. Sponseller*, 2020 Ohio Misc. LEXIS 5841, *6-7 (Stark Cty. Common Pleas) (Plaintiff is not entitled to simultaneously recover under the rescission remedy of the HSSA and seek damages, including treble damages, under the CSPA).

{¶40} These cases hold that if a buyer elects to cancel the contract under the HSSA, the buyer is entitled to a refund only. However, the Seventh District Court of Appeals took the opposite position in *Santos*, supra, and specifically addressed whether a cancellation and refund under the HSSA precluded recovery of damages under the CSPA. *Santos*, supra. In *Santos*, the parties entered a contract for Appellee to perform home renovations. After Appellee began the renovations, the parties had a disagreement. Subsequently, Appellant emailed Appellee and sought to cancel. Appellant alleged he paid Appellee a total of

$48,219.92, yet Appellee claimed Appellant still owed $6,908. Appellee filed a mechanic's lien against the property for that amount.

{¶41} Appellant filed a lawsuit alleging a violation of the HSSA and Consumer Sales Practice Act (CSPA) based on Appellee's failure to provide notice of the right to cancel. A magistrate heard the case and awarded Appellant $6,908. Both parties filed objections. Appellant claimed the magistrate's decision *not* ordering a return of all money paid by him to Appellee was an error of law. Appellee also objected and urged the court to find the magistrate erred in awarding Appellant any damages. Appellee argued that because Appellant "elected" to cancel the contract under the HSSA, he was not entitled to damages.

{¶42} The trial court found a violation of the HSSA and CSPA based on the lack of notice to cancel. The trial court agreed that Appellant effectively canceled their agreement and found "the Court agrees with the finding of the Magistrate that [Appellant] wielded the HSSA as a sword to recoup funds he paid for services and supplies that he bargained for and received. Therefore, the Court adopts the Magistrate's equitable determination of damages and awards Plaintiff $0." The court struck the magistrate's award of $6,908. On appeal, Appellant again claimed that because Appellee failed to provide the requisite notice, and Appellant effectively canceled the parties' contract, Appellee was required to refund all money paid. *Santos*, at ¶ 29. Appellant further argued that the trial court erred by adopting and applying Appellee's sword/shield argument to reach an equitable resolution.

{¶43} The facts in *Santos* were not in dispute. The "issues and arguments [were] solely about remedies and statutory interpretation." *Id*. at ¶ 30. The court first recognized that "Ohio's Home Solicitation Sales Act is codified in R.C. 1345.21. It is a *subdivision* of Ohio's Consumer Sales Practice Act." *Id*. at ¶ 39. In recognizing that the HSSA is part of the CSPA,

the court read the provisions *in pari materia,* and in doing so, rejected the conclusion reached in *Kamposek, supra,* and related Ohio cases. *Id.* at ¶¶ 44-57.

**{¶44}** The court first noted that parties and courts often confuse the terms cancellation and recission. " 'One remedy (cancellation) ends future (executory) obligations. The other, rescission, allows the injured party to go back and essentially undo the entire contractual relationship.' " *Santos,* ¶ 47 (Cancellation does not affect prior conduct, but merely ends executory obligations). The court reviewed the definition of "refund" under R.C. 1345.23(D)(4), which requires a refund of all payments upon "cancellation" of the contract. *Id.* at ¶ 48.

**{¶45}** In reading the HSSA and CSPA provisions together, along with the defined terms, the court held that a consumer who chooses to cancel a contract under R.C. 1345.23 is entitled to a refund for overpayment after cancellation, *in addition to* the remedies available under the CSPA and specifically, R.C. 1345.09. *Id.* at ¶¶ 49, 51. A buyer cannot "cancel" a contract when the work is already complete. Thus, the election of remedy reading does not extend to the remedy of cancellation under the HSSA; rather, the remedy of cancellation under the HSSA is in addition to other remedies under the CSPA. *Santos*, ¶¶ 49-53. The Court further states:

> Thus, while we agree Appellant had the right to cancel the parties' continuing agreement or contract for any services not performed based on the HSSA violation, we also conclude Appellant was only entitled to a refund of money paid for services not yet rendered, consistent with the meaning of the words "cancellation" and "refund." In addition to cancellation and a refund for

overpayment, if any, Appellant also had the remedies set forth in R.C. 1345.09 available.

R.C. 1345.09 has consistently been construed as requiring an election between the mutually exclusive remedies of rescission or damages due to the clearly expressed intent of the legislature embodied in the statute indicating a buyer can choose recission or damages. *Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 722, 585 N.E.2d 451 (1st Dist.1989). However, we conclude this election of remedy reading does not extend to the remedy of cancellation set forth in R.C. 1345.23. Neither R.C. 1345.09 nor R.C. 1345.23 states cancellation takes the place of the remedies in R.C. 1345.09. And as stated, the definition of the term cancellation provides that one who cancels a contract retains the right to sue for breach. *See* CANCELLATION, *Black's Law Dictionary* (11th ed. 2019).

Thus, we find no ambiguity, and upon reading the statutes collectively, as required, and using the plain language of the legislature and the terms invoked, we reach a sensible interpretation of the provisions consistent with reason and logic. Contrary to the holdings of other courts, we conclude the remedy of cancellation is *in addition* to the other remedies in R.C. 1345.09. A buyer invoking the right to cancellation should end any future obligations and entitles the buyer to a refund of money paid under the agreement for future work, if any. This cancellation still allows the buyer to sue for breach and potentially "recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in non-economic damages" under R.C.

1345.09(A). The buyer's right to cancel continues until "the seller has complied with" the statute's cancellation notice requirements. R.C. 1345.23(C). Neither R.C. 1345.09 nor R.C. 1345.23 states the remedy of cancellation is instead of those in R.C. 1345.09.

*Santos*, ¶¶ 49-51.

* * *

If the buyer decides to cancel the sale, the seller must refund all payments made under the contract to the buyer. R.C. 1345.23(D)(4)(a). This provision effectively allows the buyer to cancel the contract at any time, *but the buyer may be susceptible to an unjust enrichment claim by the seller."* (Emphasis added.) *Garber v. STS Concrete Co.*, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 18. The right to cancel does not preclude counterclaims for unjust enrichment or set offs for the value of services rendered.

The confusion of other courts likely stems from a lack of clarity as to what cancellation means, as well as the repetition of the seemingly erroneous conclusion that the election of the right to cancellation in R.C. 1345.23(D)(4)(a) eliminates the right to seek damages under R.C. 1345.09. To the contrary, this conclusion is inconsistent with a plain reading of the statutes and the fact that the word "cancellation" allows a party to seek damages for breach.

This conclusion is also supported by the limitation on *when* rescission is available as a remedy for a CSPA violation. R.C. 1345.09(C)(1) states rescission is only an appropriate remedy under the CSPA "within a reasonable time" after discovery of the grounds for it and *before* "there has been a substantial

change in the subject of the consumer transaction." *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 224, 18 Ohio B. 281, 480 N.E.2d 802 (1985). *But see Garber v. STS Concrete Co.*, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 25. Thus, where there was a substantial change in the subject of the consumer transaction, like the instant case, rescission is not an available remedy. *Reichert, supra*.

*Santos*, ¶¶ 57-59.

{¶46} We find the *Santos* reasoning persuasive. At the time Cetorelli attempted to "cancel" the contract with Appellants, the roof work was complete. Thus, Cetorelli technically could not cancel the contract under the HSSA provision, R.C. 1345.23. Similarly, the CSPA's recission remedy was unavailable to Cetorelli because there had already been a "substantial change" in the subject of the consumer transaction, namely the roof and gutters. Thus, under these facts, the only true remedies available to Cetorelli are damages under the CSPA. As held by the Seventh District, the provisions of the HSSA and CSPA must be read together to achieve a reasonable and just result. Under the present facts, we conclude that the remedies of cancellation and refund under the HSSA provision (R.C. 1345.23), do not preclude Cetorelli from pursuing damages under the CSPA.

{¶47} To hold otherwise results in a consumer with no CSPA remedies once they have attempted to exercise a "cancellation." Such a result does not make sense and would violate the very purpose and protections of both the CSPA and HSSA, particularly in more egregious cases such as this one. If the consumer must sue to obtain even a refund, that consumer would never be made whole due to the sheer cost of litigation. The failure to give a refund should in and of itself entitle a consumer to pursue remedies under the CSPA. We

conclude that the remedies available under the CSPA remain available to Cetorelli irrespective of her notices of cancellation. Appellants' first assignment of error is overruled.

### 2) *Requisite findings under CSPA to award treble damages*

{¶48} Appellants' second assignment of error acknowledges that pursuant to R.C. 1345.09(B), the trial court made findings of law that Duell Action Builders committed violations under the Ohio Administrative Code, and R.C. 1345.02(B)(2) and (B)(10) (as set forth above), but argue that the trial court was *also* required to make findings that the violations were previously determined by an Ohio court to violate R.C. 1345.02, 1345.03, or 1345.031. Appellants claim error because they were not on notice that their conduct was deceptive or unconscionable. We disagree. R.C. 1345.09(B) provides:

Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

{¶49} Stated differently, Appellants assert that a court may award treble damages only if the violations are both (1) declared deceptive or unconscionable in the Ohio Administrative Code; and (2) an act or practice determined by an Ohio court to violate R.C. 1345.02, 1345.03, or 1345.031 which is also included in the Ohio Attorney General's public inspection file. However, the plain language of the statute of R.C. 1345.09(B) expressly states that the trial court need only make a finding that the CSPA violation(s) was an act or practice declared deceptive or unconscionable under the Ohio Administrative Code or was an act or practice that has been determined to violate the above sections by an Ohio court and is in the public inspection file. Appellants' suggestion that both findings must be made is overly burdensome and wholly ignores the plain language of the statute. No further analysis is needed. Appellants' second assignment of error is overruled.

### 3) *Parol Evidence Rule*

{¶50} In the third assignment of error, Appellants argue the trial court erred in allowing Cetorelli's testimony regarding Duell's statement to Cetorelli regarding a five-year labor/workmanship warranty for the roof and gutter work and by basing CSPA liability on said extrinsic testimony.[4] The trial court found, and Duell admitted, that he orally promised Cetorelli a five-year workmanship warranty. Trial Tr., pp. 20-21. Duell later decided to exclude any workmanship warranty without informing Cetorelli until after she brought litigation against him. *Id.* Duell testified he removed it because he "had a gut feeling that she was argumentative * * *" *Id.*, pp. at 426-428.

---

[4] Appellants' Brief states: "Appellee introduced testimony that Appellants orally promised a five-year workmanship warranty and later "took it away."

{¶51} Interestingly, Cetorelli called Duell as their first witness as if on cross-examination. Counsel asked Duell regarding the promise of a five-year warranty and its ultimate exclusion from the contract. *Id.*, pp. 18-21. Defense counsel <u>did not object</u> at any time during this line of questioning. The specific objection based on parol evidence was not made until later, when Cetorelli testified, and answered a line of questions regarding the warranty. *Id.*, p. 56-57. Thus, there was no objection to Duell's testimony. Duell later testified as part of his defense and, upon questioning by the Court, admitted his oral promise of a five-year warranty with no objection. *Id.*, pp. 426-429.[5]

---

[5] The following exchange took place:

> DEFENDANT: I removed the warranty before doing business with Miss Cetorelli because I noticed that there was - - I had a gut feeling that she was argumentative from the get-go and I just - - I told Mitch [Picone], I said, She's not dealing - - a little wishy washy, and I said, "Just remove it, but if she has problems, we'll go back out," which we did. We still stand by it.
> THE COURT: Well, wait a minute. Wait a minute. You testified earlier that she was going through a tough time and her husband there was sick. * * * And then now you're saying she's argumentative. Then why did you take the job? * * * Well, if someone's going through a tough time and their husband's sick, would you agree their mind may not be clear?
> DEFENDANT: Yes.
> THE COURT: And did you take that into consideration when you were doing this contract?
> DEFENDANT: Absolutely, sir. I removed money off the bill and I treated her as fairly as I could with the free drywall services.
> THE COURT: How many other contracts have you stripped the warranty out of?
> DEFENDANT: A few times I've had an uneasy feeling with customers.
> THE COURT: Did you sit down and explain to her that you were stripping the warranty out of the contract?
> DEFENDANT: No.
> THE COURT: Would you agree a warranty is a pretty important part of the contract?
> DEFENDANT: It is. * * *

Trial Tr., pp. 427-428.

{¶52} Failure to object waives the error on appeal, unless the party can demonstrate plain error. In civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. This is not such an exceptional case.

{¶53} Assuming a proper objection, Appellant's argument is without merit. The parol evidence rule provides that " 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini,* 2000-Ohio-7, quoting 11 *Williston on Contracts* (4th Ed.1999) at 569-570. "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Id.* By prohibiting evidence of parol agreements, the rule ensures the stability, predictability, and enforceability of finalized written instruments. *Id.* As such, "[t]he parol evidence rule prohibits a party who entered a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 2009-Ohio-3554, ¶ 14. The prohibitions of the parol evidence rule are a matter of substantive law, not merely a rule of evidence, such that testimony introduced in violation of the rule, even in the absence of objection thereto, can be given no legal effect. *Id.* at ¶ 15 (finding that the parol evidence rule applies in causes of action under CSPA); *Raze Int'l, Inc. v. Southeastern Equip. Co.*, 2016-Ohio-5700, *discretionary appeal not all'd,* 149 Ohio St.3d 1407 (2017).

{¶54} Appellants maintain that the parties' written contract constituted the entire expression of their agreement such that the testimony regarding the warranty is barred from consideration. We disagree. It is clear the parties' contract contains no written labor or workmanship warranty beyond warranties implied by law; it is silent in this regard. It likewise contains no integration or merger clause. Cetorelli also stated at trial that neither the estimate nor the final contract contained any written labor/workmanship warranty. However, both Duell and Cetorelli testified that Duell orally promised a five-year workmanship warranty prior to Cetorelli agreeing to the roof work. Thus, according to Appellants, "the court admitted and relied upon that testimony to find deceptive conduct at the time of contracting." Appellants' Brief at pp. 14-15. We disagree.

{¶55} In *Galmish* supra, the Supreme Court discussed the interaction between the parol evidence rule and allegations of fraud. The court noted the principal purpose of the parol evidence rule is to protect the integrity of written contracts. *Galmish*, supra, citing *Ed Schory & Sons, Inc. v. Society Natl. Bank*, 75 Ohio St.3d 433, 440 (1996). The court found the parol evidence rule does not prohibit a party from introducing extrinsic evidence for the purpose of proving fraudulent inducement, even if the agreement contains an integration clause. *Galmish*, ¶ 28. The court went on to hold, however, the parol evidence rule applies in cases where a party alleges the inducement to sign the writing was a promise, the terms of which are "directly contradicted" by the signed writing. This means an oral agreement is not preferred over the signed writing addressing the same subject matter, but with different terms. *Id*, at ¶ 29 (citations omitted).

{¶56} In *Galmish*, Galmish acquired certain property under the terms of the divorce settlement with Cicchini. The Court ultimately found Galmish's claim was essentially that

the resale of the property at a profit was a condition of the sale to Cicchini, and at the time the parties executed the contract Cicchini never intended to resell the property. The Ohio Supreme Court found Galmish's alleged agreement to resell the property *did not contradict or vary the terms of the written agreement* under which she sold the property to Cicchini and thus was not barred by the parol evidence rule. *Id.*; *Raze, supra*, ¶ 34 (holding that if parol evidence used to show fraud in the inducement is independent of the written instrument or "does not directly contradict the signed writing," then it is admissible; an integration clause does not vitiate this exception); *compare Jeffrey Allen Indus., LLC v. Manco*, 2011-Ohio-2655, ¶ 68 (5th Dist.) (appellees' promise, made before the written contract was signed, to pay a higher price than that set out in the contract certainly varied and contradicted an essential term of the contract and was barred by the parol evidence rule).

{¶57} In *Raze, supra*, the sales contract for the sale of an excavator was comprised primarily of the sales order. It clearly indicated that sale was conditioned on the customer's (i.e., Raze's) approval. The warranty section of the sales order contained three different options but none of the three options were checked off or completed. As such, the court held that because the sales contract stood silent on the issue of a warranty, the customer's assertion regarding a representation made that the seller would stand by the machine did not contradict the written agreement in any way. *Raze*, ¶¶ 33-35 (extrinsic evidence can be used to show fraud in inducing a contract where the parol evidence does not directly contradict the terms of the signed writing). Thus, the parol evidence rule did not bar the warranty representation.

{¶58} Here, the principles from *Galmish* and *Raze* are instructive. Based on the contract at issue, we conclude that the promised five-year labor warranty does not "contradict" or vary any term in the written contract. The agreement is silent regarding a

labor/workmanship warranty, and any other express warranty for that matter. Thus, Cetorelli and/or Duell's testimony regarding Duell's oral promise of a five-year labor warranty is not barred by the parol evidence rule. Appellants' third assignment of error is overruled.

### 4) Replacement Cost of the Roof - Manifest Weight of the Evidence

{¶59} In the fourth assignment of error, Appellants argue the trial court erred in awarding full replacement cost damages without determining that replacement was in fact necessary, or that the repairs were insufficient. Appellants claim the award is against the manifest weight of the evidence. Appellants rely on their expert, Kennedy, who testified that the issues he observed could be remedied through targeted repairs. Appellants further argue that although Vega preferred replacement, she did not expressly state that repairs were not feasible. Again, we disagree.

{¶60} The standard of review for a manifest weight challenge in a civil case is the same standard applied to a criminal case. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. Thus, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " *Id.* Under a manifest weight challenge, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal. *Id.* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence.

{¶61} The trial court expressly found the expert testimony of Vega credible, and Vega clearly opined that the workmanship errors required a total replacement. In addition to the *numerous* substantive issues that needed to be rectified, Vega testified that tearing off shingles where rotted wood is located "defeats the purpose of having a brand-new roof because now you're going to have a patched roof, and it may not match because it's been a couple of years." Trial Tr., p. 284. Further, Craig, an independent witness who inspected Cetorelli's roof at Duell's request, similarly stated in his Affidavit that the roof needed to be completely torn off and replaced. Without question, the trial court's determination is supported by competent, credible evidence. Importantly, the trial court determined Vega's estimate was high, and reduced Vega's $40,000.00 replacement cost to $19,000.00, the cost testified to by Duell's expert. Appellants' fourth assignment of error is overruled.

### 5) Personal Liability - Karl Duell

{¶62} In the fifth assignment of error, Duell argues the trial court improperly determined he should be personally liable. "A corporate officer may be held individually liable for acts that violate the CSPA." *Swoger,* supra, ¶ 54, citing *Grayson v. Cadillac Builders, Inc.,* 1995 WL 546916, *3 (8th Dist. 1995); *State ex rel. Fisher v. American Courts, Inc.*, 96 Ohio App.3d 297 (1994); "In order to hold a corporate officer personally liable for his actions in violation of the CSPA, the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done." *Id.,* citing *Grayson* at *3; *Luckoski v. Allstate Ins. Co.*, 2013-Ohio-5460 (2d Dist.); *Garber* supra, ¶ 27 ("In certain contexts, * * * individuals can be held to answer for the actions of the company. Violations of the CSPA offer such a context. Where officers or shareholders of a company take part in or direct the

actions of others that constitute a violation of the CSPA, that person may be held individually liable.")

{¶63} Here, the record makes clear that Duell personally participated in multiple violations of the CSPA and HSSA, for which he is personally liable. Duell is the owner and sole member of Duell Action Builders. Duell initially visited Cetorelli's home, solicited the roof and gutter work, and prepared the parties' contract that did not include the requisite notice. Duell failed to inform Cetorelli that the work would be done by subcontractors, Duell told Cetorelli there would be a five-year warranty and then unilaterally removed it without informing Cetorelli, and Duell refused to fully correct the workmanship defects despite an independent roofer telling Duell to do so, all of which are violations under either the CSPA and HSSA.

{¶64} Contrary to Appellant's assertion, it is not necessary to make findings to "pierce the corporate veil" in this case because Duell's own direct actions violate the CSPA. The CSPA creates a "tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities." *Swoger,* ¶ 54, quoting *Grayson*, supra, fn. 1. As the Second District noted, "we need not determine whether to pierce the corporate veil since McGarvey's liability is not based upon his status as a shareholder but upon his direct actions in violating the OCSPA." *Luckoski*, at ¶ 36, citing *Inserra v. J.E.M. Bldg. Corp.,* 2000 Ohio App. LEXIS 5447 (9th Dist.); *Garber, supra*, at ¶ 27; *Mohme v. Deaton,* 2006-Ohio-7042 (12th Dist.); *Hanamura-Valashinas v. Transitions by Firenza, LLC,* 2020-Ohio-4888, ¶ 61 (11th Dist.). Appellants' fifth assignment of error is overruled.

### 6) Attorney Fees under CSPA

{¶65} In the sixth assignment of error, Appellants argue that Cetorelli had a contingent fee agreement with her counsel, and because the agreement was not in writing as required under Ohio law, she cannot recover attorney fees. Appellants' argument is wholly without merit.

{¶66} The statute is clear. Pursuant to R.C. 1345.09(F)(2), "[t]he court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if * * * [t]he supplier has knowingly committed an act or practice that violates this chapter." When the supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair, or unconscionable, the trial court may award a consumer reasonable attorney fees. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27 (1990), syllabus; *Scipio v. Used Car Connection, Inc.*, 2013-Ohio-4325, ¶ 12. The decision to grant or deny attorney fees under R.C. 1345.09(F) is discretionary and will only be reversed for an abuse of discretion. *Charvat v. Ryan*, 2006-Ohio-4592, ¶ 6, citing *Pep Boys - Manny, Moe & Jack of Delaware, Inc. v. Vaughn*, 2006-Ohio-698 (10th Dist.).

In *Palm Harbor* this court stated:

[a]ctions brought under R.C. Title 13 typically involve relatively small damages, yet the cost of recovering those damages may be enormous, as the offending suppliers may stoutly defend themselves * * *. Confronted with the likelihood of incurring very much more debt in attorney fees than could be recovered in damages, most consumers would never bring or continue to prosecute an action for a private remedy. *Gaskill v. Doss* (Dec. 26, 2000), Fairfield App. No. 00 CA 4, 2000 Ohio App. LEXIS 6185, quoting *Sprovach v. Bob Ross Buick, Inc.* (1993), 90 Ohio App.3d 117, 121, 628 N.E.2d 82.

*Smith v. Palm Harbor Homes, Inc.,* 2006-Ohio-5863, ¶ 33 (5th Dist.).

{¶67} Here, the trial court held a hearing to determine an appropriate award of attorney fees. The trial court noted that Cetorelli's counsel, Attorney Morrison, asserted that there was a verbal agreement with Cetorelli that the attorney fee would be whatever was awarded by the Court pursuant R.C.1345.09(F). Attorney Morrison was aware of the attorney fee provision in the CSPA because he handled previous cases of this nature in the same manner. The trial court proceeded to award fees under R.C. 1345.09(F)(2), precisely as the result of deceptive acts and/or practices that violated the CSPA. The court stated:

> It is obvious to the Court that Plaintiff's counsel put an immense amount of work into this case. Consumer Sales Practice Act claims are difficult to prove, with the risk of recovery at a high end. The Court finds there is no Contingent Fee Agreement even though Plaintiff and her counsel entered into a fee agreement after the Court issued its Findings of Facts and Conclusions of Law. *Judgment Entry*, August 28, 2025, p. 2, reinstating the *Judgment Entry,* July 10, 2025.

{¶68} The trial court awarded such fees based on the accepted lodestar analysis and did not enhance those fees in any manner. When ruling on a request for attorney fees, a trial court must determine the "lodestar," which is the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked on the litigation.[6] *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855 (10th Dist.) (awarding attorney fees under R.C. 1345.09(F)(2) using the

---

[6] According to *Bittner*, "[w]hen awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B) [which is now Prof.Cond.R. 1 .5(a)]." *Bittner v. Tri-County Toyota,* 58 Ohio St.3d 143, 146 (1991), syllabus.

lodestar approach). Thus, an award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination. *Id.*, at ¶ 45. "There is a strong presumption that the lodestar amount is the proper amount for an attorney-fee award." *Id.*, citing *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 19. The evidence must substantiate the award of fees as being reasonable. *Id.* Such evidence showing the reasonableness of the attorney fees may take the form of testimony, affidavits, answers, or other forms of sworn evidence. *Id.*

{¶69} "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *White v. Lima Auto Mall, Inc.*, 2009-Ohio-411, ¶ 15 (3d Dist.), citing *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). A trial court judge has "an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *White*, at ¶ 16, citing *Brooks*, at 91; *Lunar Lagoons LLC v. Stephens,* 2025-Ohio-2389, ¶ 63 (3d Dist.).

{¶70} The type of fee agreement between Cetorelli and her counsel is wholly irrelevant to the attorney fees awarded by the trial court under R.C. 1345.09(F). Appellants' focus upon whether Cetorelli had a "contingency fee agreement" with her counsel is merely an attempt to distract the court with respect to the award of fees. The trial court carefully considered the elements of the lodestar, stating, "the Court has taken in all the relevant factors as set out in the Lodestar guidelines * * *." Further, the trial court even reduced some hours and fees that the trial court found were not reasonable. Appellants' own expert testified that the rates of Cetorelli's counsel were below those of similarly experienced attorneys.

Accordingly, the trial court's award of attorney fees pursuant to R.C. 1345.09(F)(2) was proper and reasonable. Appellants' sixth assignment of error is overruled.

## CONCLUSION

{¶71} Appellants' first, second, third, fourth, fifth, and sixth assignments of error are overruled in their entirety. The judgment of the Stark County Court of Common Pleas is affirmed in all respects.

{¶72} Costs to Appellants.

By: Montgomery, J.

Hoffman, P.J. and

Popham, J. concur.